IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STEPHEN J. HOWE, | * |
| Plaintiff, | * |
| v. | *   Civil Action No. GLR-24-1896 |
| MARYLAND DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, et al., | *<br><br>* |
| Defendants. | |

\*\*\*

# MEMORANDUM OPINION

THIS MATTER is before the Court on Maryland Department of Public Safety and Correctional Services ("Department" or "DPSCS"), Secretary Carolyn Scruggs, Deputy Secretary Annie Harvey, Commissioner J. Phillip Morgan, and Warden William Bailey ("Individual Defendants"), (collectively "Defendants") Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 11). The Court will construe Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 11) as a Motion to Dismiss. The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant in part and deny in part Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.

I.  BACKGROUND[1]

In 2013, Plaintiff Stephen Howe was sentenced to 20 years of incarceration. (Compl. ¶ 11, ECF No. 2). He began serving his sentence at the Eastern Correctional Institution in Westover, Maryland ("ECI"). (Id.). Although Howe entered prison as a healthy 19-year-old, his health began declining just a few years later. (Id. ¶¶ 12, 15).

In 2017, Howe began having headaches, dizziness, and changes in his vision. (Id. ¶ 15). He reported these symptoms to Wexford Health Sources, the inmate medical healthcare services provider for the Department of Corrections. (Id.). Additionally, he reported these issues to Amanda Morris, RN; Tracey L. Hall, RN; Paul Matera, MD; Charlotte Townley, RN; Stephanie Cyran, NP; Ruth Pinkney, PA; Binta Bojang, CRNP; Becky Harley, RN; Clayton Raab, MD; and Ruth Campbell, PA, among others. (Id. ¶ 16).

After the headaches, dizziness, and changes in vision continued for months, in October 2017, Ruth Pinkney, a Physician Assistant at ECI, ordered a cervical-spine x-ray. (Id. ¶ 17). Despite Pinkey's order, no x-ray was ever performed. (Id. ¶ 18). A few months later, Howe had a chronic care visit and reported that he still had headaches and dizziness (Id. ¶ 19). At that point, Stephanie Cyran, a Nurse Practitioner with Wexford, ordered a front and lateral chest x-ray, but Howe's medical records indicate this x-ray was never performed. (Id. ¶¶ 21–23).

Over the next four years, some version of this scenario repeated: Howe reported the same symptoms to different medical providers; those medical providers failed to order any

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 2) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

testing; and his health worsened. (Id. ¶¶ 24–37, 45–46). Howe reported his worsening neurological symptoms to medical providers "at least twenty separate times over the course of nearly four years." (Id. ¶ 45). Howe's symptoms became so persistent he had "gotten used to" it. (Id. ¶ 30).

Finally, on February 16, 2021, Howe had a chronic care visit with Dr. Clayton Raab, who performed a neurological work up and ordered an MRI and a neurology consult to take place after the MRI was completed. (Id. ¶¶ 40–42). Howe had the MRI performed on March 5, 2021, and the results showed that he had lesions on his brain that were consistent with Multiple Sclerosis ["MS"]. (Id. ¶ 44). Howe received a formal MS diagnosis on August 18, 2021. (Id. ¶ 53).

Following his March 2021 MRI, Howe did not receive treatment for his MS for over one year, "save for a handful of physical therapy appointments," which "is not an accepted treatment for MS." (Id. at 9, ¶¶ 55–56).[2] All the while, Howe's symptoms got so bad that he could no longer walk. (Id. ¶¶ 54, 57). He also began having memory loss. (Id.). In an August 26, 2021 chronic care visit, Dr. Raab confirmed that Howe "is very disabled" and urged that he needed to be seen by a neurologist "as soon as reasonable." (Id. ¶¶ 57–58).

Howe was prescribed medication for his MS in June of 2022, almost five years after his symptoms first arose. (Id. ¶ 60). The medication did not improve his symptoms. (Id. ¶¶ 61–64). A neurologist suggested Howe try Ocrevus, an alternative drug therapy used to treat and manage MS, but no provider ever prescribed Ocrevus. (Id. ¶¶ 65–66).

---

[2] Citations to the record refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

By the end of his sentence, Howe lacked the "ability to walk, work, lift items, see, write, speak, and care for himself." (Id. ¶ 72). Howe alleges ECI did not provide proper accommodations even though he requested "all forms of relief." (Id. ¶ 72). Specifically, after he lost his ability to walk, Howe needed a wheelchair, but Defendants denied him regular access to one, despite his requests. (Id. ¶ 74). This meant that Howe was forced to "us[e] walls and doors around ECI to steady his balance when moving around the facility." (Id. ¶ 76). Howe also could not safely use the showers, bathrooms, toilets, and other facilities at ECI. (Id. ¶ 78). Howe lastly alleges that the Department failed to provide a job for him once he became disabled, forcing him to "to sit idle each day, while his non-disabled peers enjoyed the benefits of prisoner job assignments." (Id. ¶¶ 80–81).

Howe was ultimately released on medical parole. (Id. ¶ 71). While he acknowledges that an early diagnosis could not have prevented the onset of MS, he claims that an earlier diagnosis could have prevented the severity of the disabilities from which he now suffers. (Id. ¶¶ 47–48). He seeks punitive damages and other financial relief. (Id. at 15, 24).

**A.     Procedural History**

On June 28, 2024, Howe filed his Complaint against Maryland Department of Public Safety and Correctional Services, Secretary Carolyn Scruggs, Deputy Secretary Annie Harvey, Commissioner J. Phillip Morgan, and Warden William Bailey. (ECF No. 1). The four-count Complaint alleges violations of: the Eighth Amendment to the United States Constitution under 42 U.S.C. § 1983 (Count I); Articles 16 and 25 of the Maryland Declaration of Rights (Count II); the American with Disabilities Act, 42 U.S.C. §§ 12101–

12165, 12202–12213 (Count III); and Section 504 of the Rehabilitation Act, 9 U.S.C. § 794 (Count IV). (Compl. ¶¶ 83–144). On August 6, 2024, Defendants filed the instant Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 11). On September 9, 2024, Howe filed an Opposition. (ECF No. 14). Defendants filed a Reply on September 18, 2024. (ECF No. 15).

## II.     DISCUSSION

**A.     Conversion**

Defendants style their Motion as a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for Summary Judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: (1) notice; and (2) a reasonable opportunity for discovery. Greater Balt. Ctr. For Pregnancy Concerns, Inc. v. Mayor and City Council of Balt., 721 F.3d 264, 281 (4th Cir. 2013).

When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005)

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448–49 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. V. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To sufficiently raise the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

"The Fourth Circuit places 'great weight' on the affidavit requirement." Nautilus Ins. Co. v. REMAC Am., Inc., 956 F.Supp.2d 674, 683 (D.Md. 2013) (quoting Evans, 80

6

F.3d at 961). However, non-compliance may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary." Harrods, 302 F.3d at 244. Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." Id. at 247 (quoting 10B Wright, Miller & Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998) (internal quotation marks omitted)).

Here, the Court declines to convert this motion into a motion for summary judgment because the factual record is not sufficiently developed. Further, the Court maintains "complete discretion" to decline to convert a motion to dismiss to one for summary judgment. Woodbury v. Victory Van Lines, 286 F.Supp.3d 685, 693 (D. Md. 2017) (quoting Sager v. Housing Comm'n of Anne Arundel Cty., 855 F.Supp.2d 524, 542 (D.Md. 2012). Accordingly, the Court will treat Defendants' Motion as one to dismiss.

**B.    Motion to Dismiss**

    **1.    Standard of Review**

In reviewing the Complaint in light of a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to Howe. Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)); Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only

a "short and plain statement of the claim showing that the pleader is entitled to relief." Migdal v. Rowe Price-Fleming Int'l Inc., 248 F.3d 321, 325–26 (4th Cir. 2001); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed.R.Civ.P. 8(a)(2)). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. Id. at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

**2.   Analysis**

**i.   Supervisory Liability Under 42 U.S.C. § 1983 (Count I)**

In Count I, Howe alleges Secretary Carolyn Scruggs, Deputy Secretary Annie Harvey, Commissioner J. Phillip Morgan, and Warden William Bailey should be held liable in their supervisory capacities under 42 U.S.C. § 1983 because medical personnel knew of and disregarded a substantial risk of serious harm to his health. (Compl. ¶¶ 83–89). For the reasons stated below, the Court will dismiss Count I.

Prisoners can establish an Eighth Amendment violation with respect to medical care if they can prove that there has been deliberate indifference to their serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). The test for deliberate indifference has two parts. First, whether the deprivation of medical care was sufficiently serious (objective component) and second, whether there existed a culpable state of mind (subjective component). See Wilson v. Seiter, 501 U.S. 294, 298–99 (1991).

To successfully invoke supervisor liability as to a § 1983 claim, a plaintiff must allege three elements: (1) the supervisor had actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the plaintiff; (2) the supervisor's response to that knowledge was so inadequate that it amounted to deliberate indifference or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the plaintiff's constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

Here, Howe does not meet any of these elements because he fails to allege that the named Individual Defendants violated his rights. The Supreme Court explained in Iqbal that, in the context of § 1983, "the term 'supervisory liability' is a misnomer." 556 U.S. at 677. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. at 676. In other words, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. at 677. Liability is determined person by person: A plaintiff must show "each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. at 676; see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001).

Despite this mandate, Howe argues that he "is not required to allege that the [I]ndividual [D]efendants personally participated in his medical diagnosis or treatment." (Pl.'s Opp'n Defs.' Mot. Dismiss Alternatively Mot. Summ. J. ["Opp'n"] at 6, ECF No. 14). Rather, he claims it is sufficient to "allege[] that Defendants 'outsourced the day-to-day provision of medical care to private entities . . . and that the private entities failed to provide [him] with constitutionally adequate medical care." (Id.). In other words, he asserts that "[t]he lack of personal participation by the Defendants is a red herring." (Id.). Not so. In the Fourth Circuit, a plaintiff must identify how each Individual Defendant violated the constitution to state a supervisory-liability claim. King v. Riley, 76 F.4th 259, 269–70 (4th Cir. 2023). Howe does not do that here. Instead, he generally claims that each of the Individual Defendants "[are] aware of, ha[ve] failed to remedy, and [are] deliberately

10

indifferent to the inadequate medical treatment for incarcerated individuals, which places them at substantial risk of serious harm." (Compl. ¶ 6). "This boilerplate conclusion—lacking defendant-specificity and factual support—does not state a claim for relief." King, 76 F.4th at 269; see Timpson ex rel. Timpson v. Anderson Cnty. Disabilities and Special Needs Bd., 31 F.4th 238, 258 (4th Cir. 2022). Howe's supervisory liability claim will be dismissed.[3]

### ii. Maryland Declaration of Rights (Count II)

Howe next alleges Defendants' acts and omissions deprived him of his rights under the Maryland Declaration of Rights, Articles 16 and 25, to be free from cruel and unusual punishment. (Compl. ¶ 100). Defendants claim they are entitled to statutory immunity. (Defs.' Mot. Dismiss Alternatively Mot. Summ. J. ["Mot."] at 10–11, ECF No. 11-1). At bottom, the Court agrees that the Individual Defendants are entitled to immunity but declines to dismiss Count II as to DPSCS at this stage for reasons stated below.

Like the Eighth Amendment, Articles 16 and 25 of the Maryland Declaration of Rights prohibit cruel and unusual punishment. Robinson v. Pytlewsi, No. PX 19-01025, 2020 WL 607030, at *5 (D.Md. Feb. 7, 2020). Articles 16 and 25, therefore, are interpreted in pari materia with the Eighth Amendment. Id. (citing Farmer v. Kavanaugh, 494 F.Supp.2d 345, 371 (D.Md. 2007)). "Thus, any analysis as to the Eighth Amendment is

---

[3] The Court will also dismiss Count I as to the Maryland Department of Public Safety and Correctional Services because state agencies and departments do not constitute a person within the meaning of 42 U.S.C.§ 1983. See Andrews v. Maryland Dep't of Pub. Safety & Corr. Servs., No. JMC 23-00172, 2024 WL 520038, at *9 (D.Md. Feb. 9, 2024).

11

equally applicable to [plaintiff's] claims under [Articles 16 and 25 of] the Maryland Declaration of Rights." Id.

Defendants argue that, as state personnel, they are entitled to Maryland statutory immunity. (Mot. at 10–11). State personnel are immune from certain liability in federal court absent a showing of malice or gross negligence. See Thomas v. Maryland, No. GJH 17-1739, 2017 WL 6547733, at *9 (D.Md. Dec. 20, 2017) (dismissing claims against state officials where complaint contained no allegations of malice or gross negligence). Maryland courts have consistently defined "malice" as "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." Barbre v. Pope, 935 A.2d 699, 714 (Md. 2007) (cleaned up). Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." Id. at 717.

Here, Howe does not allege that any of the Individual Defendants acted with reckless disregard or with malice. Indeed, as noted earlier, Howe argues he does not need to show that any of the Individual Defendants were involved in his care at all, much less that they exhibited reckless disregard or malice. That is incorrect. Cf Andrews v. Md. Dep't of Pub. Safety & Corr. Servs., No. JMC 23-00172, 2024 WL 520038, at *10 (D.Md. Feb. 9, 2024) (declining to dismiss claim because plaintiff adequately alleged gross negligence). As a result, the Individual Defendants are entitled to immunity and Howe's claim under

the Maryland Declaration of Rights will accordingly be dismissed as to the Individual Defendants. See Thomas, 2017 WL 6547733, at *9.

As for the Department, Howe argues that DPSCS may be held liable because "[t]he immunity of the State and of its units is waived as to a tort action, in a court of the State." (Opp'n at 7). Defendants do not address this argument, much less defeat it, and the Court declines to make arguments on behalf of a litigant. See Wootten v. Virginia, 168 F.Supp.3d 890, 895-96 (W.D.Va. 2016) ("[C]ourts widely agree that parties have the burden to present legal arguments in the first instance."). Howe's claim against DPSCS as to Count II will accordingly survive at this stage of the litigation but will be dismissed as to the Individual Defendants.

### iii. American With Disabilities Act and Rehabilitation Act (Counts III and IV)

In Counts III and IV, Howe alleges Defendants violated the Americans with Disabilities Act ("ADA") and Rehabilitation Act because they failed to provide him access to a wheelchair in light of his MS and denied him equal access to and benefits from DPSCS's services in the form of the prison work program. (Compl. ¶¶ 115–16; 138–43). Defendants counter that Howe was not cleared by medical providers to work after his MS diagnosis and was therefore not eligible to obtain employment at ECI, and that reasonable accommodations were offered to Howe. (Mot. at 12). The Court declines to dismiss Counts III and IV at this stage of the litigation for reasons explained below.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

13

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act provides that no qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Fourth Circuit has recognized that "[t]he scope of liability under the ADA is generally the same as that under the Rehabilitation Act." Wood v. Md. Dep't of Transp., 732 F.App'x 177, 181 (4th Cir. 2018).

To state a claim under these statutes, a plaintiff must allege plausible facts to establish that "(1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005). Additionally, the ADA permits plaintiffs to pursue three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact and (3) failure to make reasonable accommodations. Richardson v. Clarke, 52 F.4th 614, 619 (4th Cir. 2022). Howe states that the nature of his claims, one regarding the denial of a wheelchair, and the other involving the denial of employment, are based on the third ground—failure to make reasonable accommodations. (Opp'n at 8–10).

The Court will first address the employment issue. Howe meets the first element because Defendants do not dispute that MS qualifies as a disability under the ADA and Rehabilitation Act. See Jackson v. Sprint/United Mgmt. Co., 633 F.Supp.3d 741, 748 (D.Md. 2022). Howe meets the second element because he sufficiently pled that he may have been otherwise eligible to work even with his MS diagnosis. (Compl. ¶ 79). On this point, Defendants contend that Howe fails to show he was otherwise eligible to work because he "was not medically cleared to work in any capacity following his multiple sclerosis diagnosis." (Mot. at 12). Howe responds that "[w]ithout the benefit of discovery, it is impossible to know the jobs that were available at ECI, and whether Mr. Howe would be able to perform these jobs." (Opp'n at 10). This element presents a closer call, but on balance the Court finds Howe satisfies the second element at this stage of the litigation. And finally, Howe meets the third element because he has sufficiently pled that Defendants denied him access to employment because of his MS diagnosis. (See Compl. ¶¶ 80–82); Fauconier v. Clarke, 966 F.3d 265, 277 (4th Cir. 2020) ("Finally, the allegations adequately support the inference that [prison] officials denied [Plaintiff] prison employment because they regarded him as disabled. Indeed, they expressly relied on his medical classification, explaining that he was 'ineligible for all jobs' because of the medical condition underlying that classification."). Howe therefore satisfies all three elements to state a claim under the ADA and RA as to his employment.

The Court will also permit Howe to proceed at this time on his ADA and RA claims based on the failure to provide reasonable accommodations for the use of his wheelchair.

The ADA requires public entities, including prisons, to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities. See 42 U.S.C. § 12132(2).

Here, Howe alleges he "depended on using walls and doors around ECI to steady his balance when moving around the facility," because Defendants denied him access to a wheelchair. (Compl. ¶¶ 74–77). He additionally alleges that "the showers, bathrooms, toilets, and other facilities at ECI were not able to safely accommodate those with severe physical disabilities." (Id. ¶ 78). Defendants concede that prison officials denied Howe access to a wheelchair, but only in the prison's dayroom and outside courtyard, and only due to safety concerns. (Mot. at 4). Defendants maintain that whenever Howe "wanted to use the dayroom or outside courtyard, he would be wheeled there by staff and given assistance with sitting on a chair or bench" and "ECI staff assisted [Howe] with using the showers and other areas within the dayroom as needed." (Id.). Howe argues Defendants only gave him a walker, which was not a reasonable accommodation because it did not prevent him from falling and injuring himself. (Compl. ¶¶ 75, 78; Opp'n at 9). At bottom, the Court finds these factual disputes inappropriate to resolve at this stage and accordingly declines to dismiss Counts III and IV.

### III.   CONCLUSION

For the forgoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 21) will be construed as a Motion to Dismiss. The Motion to Dismiss is granted as to his Supervisor Liability claim (Count I), granted in part and denied in part as to his Maryland Declaration of Rights claim (Count II) and denied as to his ADA and Rehabilitation Act claims (Counts III and IV). Defendants will answer the Complaint as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. A separate Order follows.

Entered this 19th day of November, 2024.

/s/
George L. Russell III
Chief United States District Judge